**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PARADYME ASSET MANAGEMENT, LLC, | § § | |
| *Plaintiff* | § § | SA-24-CV-00737-XR |
| | § | |
| -vs- | § § | |
| | § | |
| FIGURD, LLC, PEGY BRIMHALL, | § | |
| DAVID ROBERTSON, ROBERTSON | § | |
| ARCHITECTURE, LLC, | § | |
| *Defendants* | § | |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendants David Robertson ("Robertson") and Robertson Architecture, LLC's ("Robertson Architecture") (together, "Robertson Defendants") Motion to Dismiss (ECF No. 3), Plaintiff's Response (ECF No. 14), and the Robertson Defendants' Reply (ECF No. 15). After careful consideration, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## BACKGROUND

This dispute arises out of the design and development of an apartment complex in San Antonio, Texas. Five actors are involved. Plaintiff Paradyme Asset Management funds the development and operation of construction projects and other businesses. ECF No. 1 ¶ 3 Defendant Figurd, LLC ("Figurd") is a design firm for residential projects and Defendant Pegy Brimhall ("Brimhall") is its sole member. *Id.* ¶ 5. Robertson is a licensed architect, and Robertson Architecture is his architectural firm.[1] *Id.* ¶¶ 6–7.

---

[1] The Court has diversity jurisdiction because Plaintiff is a resident of Tennessee and Defendants are residents of Texas and Georgia. *Id.* ¶¶ 2, 4–7.

In December 2021, Plaintiff and Figurd contracted to design, develop, and build the apartment complex, which designated Figurd as the architect (the "Agreement"). *Id.* ¶¶ 11–12. The Agreement attached a set of "initial approved plans" prepared by Figurd and listed Brimhall as the "designer." *Id.* ¶ 13. Figurd was paid $218,000 at the outset, including a $30,000 success fee. *Id.* ¶ 33.

Brimhall selected Robertson to be the "Project Manager," "as defined in Agreement."[2] *Id.* ¶ 16. But without consulting or informing Plaintiff, "Figurd—through Brimhall—unilaterally delegated its role *as architect* on the [p]roject" to the Robertson Defendants. *Id.* ¶ 17.

Plaintiff alleges that Robertson lacked sufficient knowledge and experience to serve as both the Project Manager and architect of record, in violation of the Agreement. *Id.* ¶¶ 18–22. As work began, it "became apparent that there were numerous and substantial design errors and flaws in the plans and specifications prepared by Robertson and Figurd that prevented the timely development and construction of the project." *Id.* ¶ 23. Plaintiff alleges these plans failed to "factor in rudimentary details and contained errors that an experienced architect would not have made," such as unusable room layouts, wall assemblies that did not meet structural code, and incorrect calculations for the depth of the building's foundation.[3] *Id.* ¶¶ 37–38.

To remedy these errors, the general contractor and subcontractors for the project submitted Requests for Information to Brimhall. *Id.* ¶ 24. Plaintiff asserts these requests were also submitted to the Robertson Defendants. *Id.* ¶ 72. But according to Plaintiff, Brimhall and the Robertson

---

[2] Plaintiff did not attach the Agreement to its complaint, nor did the Robertson Defendants attach it to their motion to dismiss. As pled, it is unclear whether the Agreement explicitly referenced Robertson, or whether Brimhall separately selected Robertson under the terms of the Agreement.

[3] Plaintiff attached an affidavit of Steven Biegel detailing the Robertson Defendants' allegedly negligent acts, in compliance with TEX. CIV. PRAC. & REM. CODE § 150.002(a), which requires a certificate of merit for negligence claims against a licensed professional. ECF No. 1-1. Neither party references this affidavit for purposes of this motion, and so the Court does not address it.

Defendants failed to provide timely responses. *Id.* ¶¶ 26, 72. And when Brimhall did, they were "inaccurate or nonsensical" and created additional problems. *Id.* ¶ 26.

Plaintiff claims the faulty plans were submitted without Brimhall's review, that meetings with the City of San Antonio about the project were held in secret, and that Brimhall and Robertson failed to provide letters from the City to Plaintiff about the project's development and construction. *Id.* ¶¶ 39, 41–42. Plaintiff also alleges that Brimhall prohibited the general contractor and Plaintiff's representatives from engaging directly with other participants in the project and failed to pay members of the design team and other employees that worked on the project. *Id.* ¶¶ 30, 34–35.

As a result of these failures, Plaintiff consulted another architect to review the plans and specifications, who found substantial design flaws and issues. *Id.* ¶ 43. Plaintiff incurred additional costs and the project remains dormant. *Id.* ¶ 44.

On July 1, 2024, Plaintiff sued Figurd, Brimhall, Robertson, and Robertson Architecture, asserting claims for breach of contract against Figurd, breach of contract against Brimhall, unjust enrichment against all Defendants, and professional negligence against the Robertson Defendants.[4] On August 2, 2024, the Robertson Defendants moved to dismiss the claims against them. ECF No. 2. The Robertson Defendants also filed an answer that same day, "[s]ubject to and without waiving" their motion to dismiss.[5] ECF No. 3. This matter is now ripe for resolution.[6]

---

[4] Figurd and Brimhall brought counterclaims against for breach of contract and breach of fiduciary duty. ECF No. 21.

[5] Plaintiff launches a procedural challenge, arguing that the Robertson Defendants motion to dismiss should be denied as moot because they filed an answer the same day they moved to dismiss. ECF No. 14 at 3–4. This is meritless, because the Robertson Defendants filed their motion to dismiss before they filed their answer. *See* ECF Nos. 3 (Motion to Dismiss), 4 (Answer); *Brunig v. Clark*, 560 F.3d 292, 294 (5th Cir. 2009) ("In accordance with [Rule 12(b)], [defendant] filed their motion to dismiss before their answer" and so the motion to dismiss was not moot).

[6] On September 23, 2024, Figurd and Brimhall filed a partial motion to dismiss the extra-contractual unjust enrichment claim, arguing that the Agreement covered the claim. ECF No. 20. The unjust enrichment claim alleges a benefit conferred "on all Defendants by paying $218,000 to Figurd and its principal, Brimhall." *Id.* ¶ 58. After Plaintiff, Figurd

## ANALYSIS

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal– Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to

---

and Brimhall filed a joint stipulation acknowledging the parties' agreement is a valid and enforceable contract, the Court granted the partial motion to dismiss. October 23, 2024, Text Order. For the same reason, the Court **DISMISSES** the unjust enrichment claim against the Robertson Defendants. Just as Plaintiff cannot recover the benefit paid to Figurd and Brimhall from them because the Agreement "govern[s] the subject matter of the dispute," *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001), Plaintiff cannot recover the benefit paid from the Robertson Defendants either.

the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II.  <u>Analysis</u>

Plaintiff's professional negligence claim sounds in tort, not contract.[7] The Robertson Defendants do not contest the merits but argue the claim is barred by the economic loss rule, as Plaintiff seeks economic damages that are the subject of its contract with Figurd. ECF No. 3 at 2.

### A.  The Economic-Loss Rule

"Under Texas law, the economic loss rule generally prevents recovery in tort for purely economic damage unaccompanied by injury to persons or property." *Golden Spread Elec. Cooperative, Inc. v. Emerson Process Mgmt. Powers*, 954 F.3d 804, 808 (5th Cir. 2020); *see also Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716 (Tex. 2014) (per curiam) ("The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy."). Economic damages are "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of

---

[7] This is the only remaining claim against the Robertson Defendants. *See infra* note 6.

personal injury or damage to other property." *Bass v. City of Dallas*, 34 S.W.3d 1, 9 (Tex. App—Amarillo 2000, no pet.) (quoting *Thompson v. Espey Huston & Assocs.*, 899 S.W.2d 415, 421 (Tex. App.—Austin 1995, no writ)). "The application of the economic loss rule is a question of law for the court to decide." *Golden Spread Elec. Cooperative, Inc.*, 954 F.3d at 807.

The doctrine "serves to provide a more definite limitation on liability than foreseeability can and reflects a preference for allocating some economic risks by contract rather than by law." *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). And it applies even when there is no contract between the parties. *See id.* at 243–50 (economic loss rule barred negligent misrepresentation claim by construction contractor against architect for contractor's increased costs from architect's faulty plans when there was no contract between contractor and architect); *A & H Properties Partnership v. GPM Eng'g*, 3:-13-850-CV, 2015 WL 9435974, at *2 (Tex. App.—Austin Dec. 23, 2015, no pet.) (economic loss rule barred negligence claim against subcontractor who was not in direct contractual privity with plaintiff).

"To determine whether the economic loss rule bars a tort claim, courts look to 'the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.'" *Colbert v. Wells Fargo Bank, N.A.*, 850 F. App'x 870, 876 (5th Cir. 2021) (per curiam) (citation omitted). Because the "exact contours of the rule change in different 'areas of the law,'" "in defining the scope of the economic-loss rule as it applies to this case, the Court must be careful not to import rules arising from dissimilar areas of tort law and dissimilar facts even if those rules are labelled 'economic-loss rules.'" *TEU Services, Inc. v. Inventronics USA, Inc.*, No. SA-16-CV-1023-RCL, 2018 WL 3338217, at *3 (W.D. Tex. Feb. 5, 2018) (citation omitted). "[W]hether and how to apply the economic loss rule does not lend itself to easy answers or broad pronouncements," and the Texas

Supreme Court directs that "application of the rule depends on an analysis of its rationales in a particular situation." *LAN/STV*, 435 S.W.3d at 245–46 (citation omitted).

The economic loss rule does not bar all tort claims arising out of a contractual setting, as "a party [cannot] avoid tort liability to the world simply by entering into a contract with one party [otherwise the] economic loss rule [would] swallow all claims between contractual and commercial strangers." *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 419 (Tex. 2011). One exception to the economic loss rule is professional malpractice, or negligence.[8] *LAN/STV*, 435 S.W.3d at 243–44. As "[c]ertain professional relationships create duties separate and independent from a contract between a professional and his or her client," they "can form the basis for negligence claims against professionals, including for services performed under a contract." *Dunn v. Marine*, No. H-12-CV-03643, 2015 WL 12778390, at *13 (S.D. Tex. Oct. 13, 2015) (citing *LAN/STV*, 435 S.W.3d at 243–44). "The exception recognizes that standards governing the professions that 'are deeply developed and their application uniform and well-settled,' reduc[e] the need to defer to the parties' contractual allocation of duties and risk." *Id.* (citing *LAN/STV*, 435 S.W.3d at 244). In these situations, a party "*can* recover purely economic losses." *LAN/STV*, 435 S.W.3d at 244.

This exception is somewhat narrow. It has not been extended to "allow nonparties to a contract between a contracting party and a professional to recover economic losses caused by the professional's negligent performance of the contract." *Dunn*, 2015 WL 12778390, at *13. Instead, "[a] nonparty to a contract may recover for a professional's negligence only if the professional directed its actions to a 'known party for a known purpose.'" *Id.* (citing *LAN/STV*, 435 S.W.3d at

---

[8] A professional malpractice claim is based on negligence. *Tex. Pharmomedical Exps., Inc. v. Wang*, No. 14-19-00888-CV, 2021 WL 2325085, at *6 (Tex. App.—Houston [14th Dist.] June 8, 2021, pet. denied) (mem. op.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)).

245). This line "avoid[s] . . . unlimited and uncertain liability for economic losses in cases of professional mistake." *Grant Thorton LLP v. Prospect High Income Funds, Ltd.*, 314 S.W.3d 913, 920 (Tex. 2010).

### B. Is the Professional Negligence Claim Barred by the Economic Loss Rule?

Normally, Plaintiff's tort claim would be barred under the economic loss rule because it seeks recovery for purely economic damage—losses stemming from the now-dormant apartment complex—that are the subject of the Agreement. *See* ECF No. 1 at 11 ("award of actual, consequential, and compensatory damages"). Plaintiff does not dispute this, but argues that the "professional malpractice" exception applies because the Robertson Defendants are licensed professionals who directed their actions to a "known party for a known purpose." ECF No. 14 at 6.

Taking Plaintiff's allegations as true, this claim survives. Plaintiff claims the Robertson Defendants are licensed architects, who fall within the professional malpractice exception to the economic loss rule. *See* Tex. Civ. Prac. & Rem. Code § 150.001–003 (governing negligence suits against "licensed or registered professionals," defined to include "a licensed architect" or "any firm in which such licensed or registered professional practices"); *LAN/STV*, 435 S.W.3d at 244 & n.42 (citing Tex. Civ. Prac. & Rem. Code § 150.001–03 in discussing "negligence actions against other professionals"). As pled, the Robertson Defendants directed their action to Plaintiff with a known purpose—preparing and submitting the plans for the apartment complex. While the Robertson Defendants argue that nothing in Plaintiff's Complaint supports this conclusion, ECF No. 15 at 3, at this stage the Court views the facts in the light most favorable to Plaintiff. Plaintiff alleges Robertson was appointed as the "Project Manager" under the Agreement. It is at least plausible that Robertson knew it was doing the work for Plaintiff. That Figurd, through Brimhall,

unilaterally delegated the architect role to the Robertson Defendants does not change this. In its role as architect, the Robertson Defendants would know that the plans were being used for the apartment complex. Indeed, Plaintiff alleges it requested information from the Robertson Defendants as the project progressed. ECF No. 1 ¶ 72.

The Robertson Defendants attempt to analogize this case to *LAN/STV* and *A & H Properties Partnership*. They are distinguishable. For starters, both cases expressly acknowledged the "professional malpractice" exception. Both cases were also decided on a developed record—*LAN/STV* was post-trial, and *A &H Properties Partnership* was at summary judgment. This is important, as whether a licensed professional directs his or her actions to a "known party for a known purpose" can be a factual inquiry. And while both addressed the economic loss rule in the context of construction disputes, the facts and reasoning do not neatly track here.

In *LAN/STV*, the Dallas Area Rapid Transit Authority contracted with an architecture firm to create plans for a rail system, and independently contracted with a construction company to build the system. *LAN/STV*, 435 S.W.3d at 236. The construction company built the system based off the architecture firm's plans, which turned out to be faulty, and so sued the architecture firm for negligently preparing the plans. *Id.* at 236–37. While the Texas Supreme Court stated it was "beyond argument that one participant on a construction project cannot recover from another . . . for economic loss caused by negligence," it exempted architects from this rule; architects should be treated differently from other participants on a construction projects because "[t]he plans drawn by the architect are intended to serve as a basis for reliance by the contractor," and so are "analogous to the audit report than an accountant supplies to a client for distribution to potential investors—a standard case of liability [for negligent misrepresentation]." *Id.* at 246–47 (citation omitted). But because the plaintiff's "principal reliance must be on the presentation of the plans

by the owner, with whom the contractor is to reach an agreement, not the architect, a contractual stranger," the economic loss rule still barred the negligence claim by the construction company against the architecture firm. *Id.* The Texas Supreme Court reasoned that (i) the construction company was a "stranger" to the architecture firm's contract with Dallas, (ii) it did not "choose the architect, or instruct it, or pay it," and (iii) the architectural firm had not directed its contract performance to the construction company. *Id.* at 247.

In *LAN/STV*, the Texas Supreme Court offered two primary rationales for applying the economic loss rule: (i) deference to private ordering and parties' ability to contract and (ii) avoiding "indeterminate and disproportionate liability." *LAN/STV*, 435 S.W.3d at 240–41. As parties are in the best position to allocate risk among themselves, permitting tort suits would disrupt the *ex-ante* risk allocations already dealt with by contract. *Id.* at 241. And the economic loss rule limits the potential for "rippling liability" in contract relationships that a large class of potential third-party claimants could present. *Id.* at 239, 240, 246. These two concerns are particularly salient in construction disputes, which generally operate by "vertical" agreements among the participants that would be disrupted by tort suits down the line. *Id.* at 246.

*A & H Properties Partnership* followed *LAN/STV*. There, the plaintiff developer sued a subcontractor design professional who was performing services as part of the overall construction project with the defendant, the general contractor. *A & H Properties Partnership*, 2015 WL 9435974, at *2. The Austin Court of Appeals did not address the scope "of any duty that design professionals may or may not *generally* have." *Id.* Instead, it held that because the design professional's "duty to perform work [on plaintiff's] property arose out of [a] construction subcontract, and no other duty or relationship between [the design professional] and [plaintiff] [was] presented by th[e] record," the economic loss rule applied. *Id.* In arriving at its conclusion,

*A & H Properties Partnership* relied on the "stranger" principal of *LAN/STV* and the "vertical chain" of contracts present in the construction project. *Id.*

Unlike *LAN/STV* and *A & H Properties Partnership*, Plaintiff pled that Robertson was not a stranger—he was designated as the Project Manager under the Agreement. Even if Robertson was not explicitly identified in the Agreement, it is plausible that appointing Robertson under the terms of the Agreement made him not a stranger to Plaintiff. Plaintiff's request for information from the Robertson Defendants as the project progressed points to "principal reliance," *LAN/STV*, 435 S.W.3d at 247, with the Robertson Defendants. And unlike *LAN/STV*, where the plaintiff's negligent misrepresentation claim stemmed from duties owed to someone else, Plaintiff asserts the professional negligence claim against the Robertson Defendants based on duties owed to Plaintiff, not to Figurd or Brimhall.

At this stage, the nature of the parties' agreement is also unclear and the Court cannot infer there is a "vertical chain" of contracts that the economic loss rule applies to. None of the applicable contracts are in the record from which the Court could conclude that permitting Plaintiff's claim would disrupt *ex ante* risk allocation between the parties. The concern of "rippling liability," *id.* at 239, is also diminished, given that the Robertson Defendants are the only other actors involved.

Accordingly, the Court cannot conclude that the economic loss rule applies as it is plausible that the Robertson Defendants engaged in professional negligence towards Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Defendants David Robertson and Robertson Architecture, LLC's Motion to Dismiss (ECF No. 3) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim for unjust enrichment against the Robertson Defendants is **DISMISSED** and Plaintiff's claim for professional negligence against the Robertson Defendants **SURVIVES**.

It is **SO ORDERED**.

**SIGNED** this 20th day of January, 2025.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE